UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

JOSE L. AGUAYO CALAHORRA,            Case no. 21-11180-t13

    Debtor.

## OPINION

Before the Court is Debtor's objection to a $37,500 secured proof of claim. The claimed collateral is Debtor's lot in Chaparral, New Mexico and a 1997 Mobile Home. The Court has reviewed the relevant documents and concludes that they are riddled with obvious, significant mistakes and ambiguities, rendering them nearly meaningless and unenforceable. In addition, the creditor's collection efforts included egregious legal and procedural errors, misrepresentations, and automatic stay violations. Because the Court must honor a state court default judgment that was obtained in apparent violation of Debtor's due process rights, the creditor has an allowed unsecured claim for $37,500. His claim to secured status is disallowed, however, and the Court will order him to take all steps necessary to give Debtor clear title to his lot and Mobile Home.

A.     FACTS.[1]

Based on the docket in this case and the evidence presented at the final hearing, the Court finds:

Creditor Hung Q. Vu, M.D., is an orthopedic surgeon who lives in El Paso, Texas. He testified at the final hearing and appears to be an honest man. He had the poor judgment to become

---

[1] The Court takes judicial notice of its docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket).

financially entangled with an El Paso realtor named John Hoang Trien, which is how he became involved in Debtor's bankruptcy case.

Dr. Vu's 2013 loan to Mr. Trien. On April 9, 2013, Dr. Vu loaned $15,500 to Mr. Trien so he could buy Lot 19, Block 11, Desert Aire Estates, Chaparral, Dona Ana County, New Mexico (the "Lot").[2] The owner, Cynthia Salazar, conveyed the Lot to Mr. Trien by warranty deed on April 9, 2013. Ms. Salazar also signed, in blank and undated, the title to a 1997 Clayton mobile home on the Lot (the "Mobile Home"). She delivered the signed title to Mr. Trien.

Dr. Vu's loan to Mr. Trien was memorialized by a Real Estate Lien Note (First Note) dated April 8, 2013 (the "Note"). The Note provided for interest at 15% and a maturity date of November 6, 2013. As security for the Note, Mr. Trien granted Dr. Vu a deed of trust on the Lot (the "Deed of Trust"), which was duly recorded. The trustee was Robert Reinhardt, an El Paso attorney. The terms of the Note and the Deed of Trust are inconsistent in a number of important respects, including the interest rate.

Nothing in the record indicates that the Mobile Home is permanently attached to the Lot, and/or that its title was ever deactivated or canceled. It continues to be taxed as a manufactured home. Mr. Trien did not grant Dr. Vu a security interest in the Mobile Home.

Mr. Trien never made any payments on the Note.

2016 Purchase Agreement Between Mr. Trien and Debtor. In 2016, Mr. Trien and Debtor signed a document entitled Purchase Agreement-Residential Resale (the "Purchase Agreement"). Mr. Trien signed the agreement on January 11, 2016, while Debtor signed it on June 10, 2016. The Purchase Agreement provides for Debtor to buy the Lot and Mobile Home for $42,500 by making a $5,000 down payment "sometimes in December 2015" and closing the purchase on January 15,

---

[2] The street address of the Lot is 1095 Enchanted Dr., Chaparral, New Mexico 88081.

2016. Although the Purchase Agreement is internally inconsistent, it appears that Mr. Trien was going to provide seller financing for the remaining $37,500. The financing terms are incomplete and confusing. Among other omissions, no interest rate was specified, even though the monthly payments ($495.58) were described as principal and interest payments. Further adding to the confusion is the fact that Debtor signed the Purchase Agreement seven months after the down payment was due and six months after the closing was to take place. Nevertheless, Debtor began making $500 monthly payments to Mr. Trien on December 30, 2015.

<u>Mr. Trien Purports to Assign the Purchase Agreement to Dr. Vu</u>. In 2017 Dr. Vu demanded that Mr. Trien repay the $15,500 loan. Instead, Mr. Trien signed a document entitled "Transfer and Assignment of Contract" which purported to assign to Dr. Vu all of Mr. Trien's rights under the Purchase Agreement (the "Assignment"). Dr. Vu testified that he accepted the Assignment in full satisfaction of Mr. Trien's obligations under the Note and Deed of Trust. The Assignment was never recorded and Mr. Trien retained title to the Lot. Although the record is not clear on this point, Mr. Trien may have given Dr. Vu the original Mobile Home title he got from Ms. Salazar. Debtor was not notified of the Assignment.

<u>Mr. Trien Double Crosses Dr. Vu</u>. On June 15, 2018, despite having allegedly assigned the Purchase Agreement to Dr. Vu, Mr. Trien closed on the sale of the Lot to Debtor. Mr. Trien conveyed the Lot to Debtor by warranty deed, while Debtor gave Mr. Trien $5,000 and signed a document entitled New Mexico Mortgage (Deed of Trust) (the "Mortgage"). Apparently there is no separate promissory note. The Mortgage specifies monthly payments of $500 and a 10% interest rate. Debtor, who had been paying Mr. Trien since December 2015, continued to pay him. The status of the Mobile Home title is unclear, although the deed to Debtor stated that it included the Mobile Home.

The warranty deed and the Mortgage were recorded on June 28, 2018. The parties did not get a title search or title insurance before completing the transaction. At the time of closing, Debtor did not know about the Note, Deed of Trust, or Assignment.

Debtor's Payments to Mr. Trien. Between December 2015 and November 2020, Debtor made cash or in-kind payments to Mr. Trien totaling $40,400. Most of the payments were (more or less) monthly payments of $500, but on several occasions larger amounts, ranging from $3,000-$8,500, were credited to Debtor for construction work he and his son did on Mr. Trien's various properties. According to Debtor, the payments in evidence do not reflect everything he paid to Mr. Trien. Debtor believes he has paid off the Mortgage. He did not list Mr. Trien as a creditor in his bankruptcy schedules.

Typically, Debtor would deliver his payments to Mr. Trien at his real estate office in El Paso. Sometimes Dr. Vu would be at Mr. Trien's office and would collect Debtor's payment and give him a receipt. It was Debtor's understanding, however, that any payment he handed to Dr. Vu was in satisfaction of the Mortgage debt; Debtor never believed, and no one ever told him, that he had any payment obligation to Dr. Vu.

Mr. Trien files bankruptcy. Mr. Trien filed a chapter 11 bankruptcy case in the Western District of Texas in August 2019. His amended schedules listed 173 parcels of property, primarily modest houses in El Paso, Texas, encumbered by one or more mortgages. A chapter 11 trustee was appointed in the case, followed by conversion to chapter 7. It is a complicated case that has not yet been resolved. Dr. Vu filed two proofs of claim in the case, one for $1,308,000 and the other for $1,841,000. The Court assumes that the later, larger claim superseded the first one.[3] Dr. Vu's claim

---

[3] In an attachment to the earlier proof of claim, Dr. Vu asserted that Mr. Trien forged his signature on a release of deed of trust.

is based on loans made to Mr. Trien that were allegedly secured by deeds of trust on ten or so parcels of real property in the El Paso area. It appears to have been Mr. Trien's bankruptcy filing that prompted Dr. Vu to begin his attempts to collect money from Debtor.

Dr. Vu's collection efforts. Dr. Vu believed that, because of the Assignment, Debtor owed him $37,500. As shown below, he was mistaken. Nevertheless, Dr. Vu began trying to collect from Debtor. The result was a series of missteps and improper legal proceedings that, for the most part, must be laid at the feet of his Texas and New Mexico counsel.

1. The Otero County eviction action. In February 2020, Dr. Vu, through his Texas counsel Richard Roman, filed a Petition by Owner for Restitution in the Otero County Magistrate Court, alleging that Debtor was in breach of a rental agreement and owed $6,000 of unpaid rent. Mr. Roman attached the Note to the petition. The action was dismissed for lack of jurisdiction because the Lot is not in Otero County. The factual allegations in the petition bear no relation to reality and would not have complied with Fed. R. Bankr. P. 9011 had they been made in this Court.

2. The Texas state court action. About a month later, Dr. Vu, again acting through his counsel Mr. Roman, sued Debtor in Texas state court. This time, Dr. Vu alleged that he was entitled to a money judgment for $37,500 under the Mortgage, even though the Mortgage was granted to Mr. Trien, not Debtor, and secured an obligation to Mr. Trien.

Debtor testified he was never served with process in the Texas lawsuit. The return of service shows that the notice and summons were delivered to a Jose T Aguayo C. at an address in El Paso, Texas. Debtor testified that he has never lived at the El Paso address, and that the address belongs to one of his granddaughters. The evidence supports Debtor's assertion that he was never served with process. Furthermore, a suit against a New Mexico citizen on a New Mexico mortgage

encumbering New Mexico real property almost certainly should be brought in New Mexico, not Texas..

On March 29, 2021, the Texas state court entered a default judgment against Debtor for $37,500 in damages plus $1,500 in attorney's fees and "pre- and post-judgment interest at 7%" (the "Texas Default Judgment").

3. <u>Dr. Vu's unsuccessful attempt to domesticate the Texas Default Judgment</u>. On May 17, 2021, Dr. Vu recorded a copy of the Texas Default Judgment with the Dona Ana County, New Mexico, clerk, apparently in an attempt to either domesticate the judgment or create a judgment lien on the Lot. As discussed below, it did neither.

4. <u>Dr. Vu's improper trustee sale</u>. On July 23, 2021, Claire Addison, Dr. Vu's New Mexico counsel, filed a notice of trustee's sale of the Lot, to be held on October 19, 2021. As discussed below, the purported deed of trust sale was defective in a number of important respects. On October 19, 2021, shortly after the time of the scheduled trustee sale, Debtor filed this bankruptcy case. Debtor's counsel transmitted notice of the bankruptcy to Ms. Addison the same day.

5. <u>Dr. Vu's first stay violation</u>. Two days postpetition, Ms. Addison recorded a "Deed of Release and Full Reconveyance" in the office of the Dona Ana County Clerk. The document is not a model of clarity, but it appears to be Ms. Addison's attempt to convey the Lot to Dr. Vu pursuant to the noticed deed of trust sale, in payment of the Texas Default Judgment. The attempted conveyance violated the automatic stay and is void.

6. <u>Dr. Vu's proof of claim</u>. On December 6, 2021, Ms. Addison filed on Dr. Vu's behalf the proof of claim at issue in this case. The proof of claim was for $37,500, allegedly

secured by the Lot and Mobile Home.[4] The alleged basis for the security is a "Default Judgment 2020DCV1680 Filed 3/29/21 El Paso Co." Despite relying on the Texas Default Judgment, the proof of claim included a Mortgage Proof of Claim Attachment that purported to list the total mortgage debt, the prepetition arrearage amount, and the monthly mortgage payment. Claiming a mortgage and mortgage debt clearly is inconsistent both with the purported deed of trust sale and the Texas Default Judgment.

7. <u>Dr. Vu's second stay violation</u>. Although he was unquestionably aware of the bankruptcy case, on December 28, 2021, Dr. Vu applied to the New Mexico Motor Vehicle Department ("MVD") for the Mobile Home to be titled and registered in his name. Dr. Vu is now the record owner of the Mobile Home. Dr. Vu had no legal right to take title to the Mobile Home and his attempt to do so violated the automatic stay and is void.

B. <u>The Note and Deed of Trust are Unenforceable</u>.

According to Dr. Vu's testimony, the Note and the Deed of Trust were satisfied by the Assignment. While Mr. Trien may have been unscrupulous to offer, and Dr. Vu unwise to accept, the Assignment in full satisfaction of the Note and Deed of Trust, that is what happened. The fact that Dr. Vu took no action against Mr. Trien to enforce his rights under the Note and Deed of Trust demonstrates that. As such, it is incumbent upon Dr. Vu to release the Deed of Trust.[5]

---

[4] The proof of claim is a strange document. Although titled "Proof of claim," the first sentence says "Comes now, Claire Addison, counsel for Creditor Hung Q. Vu in response to Chapter 13 Trustee's Objection to confirmation of Debtors' Chapter 13 Plan." Ms. Addison then attaches copies of the Texas Default Judgment, an Abstract of Judgment signed by Mr. Roman, the Assignment, the Deed of Trust, a copy of the Mobile Home title, and an exhibit showing how certain claim calculations were made. Next, attached is a proof of claim form (Official Form 410) that asserts a secured claim of $37,500, to which is attached the Mortgage Proof of Claim Attachment and tax records.

[5] *See* NMSA § 48-7-4(A) ("When any debt or evidence of debt secured by a mortgage or deed of trust upon any real estate in the state has been fully satisfied, it is the duty of the mortgagee, trustee or the assignee of the debt or evidence of debt, as the case may be, to cause the full satisfaction of

Further, the time within which Dr. Vu could take legal action to enforce the Note and the Deed of Trust has long passed. By the terms of both documents, the loan had a maturity date of November 6, 2013. In New Mexico, a six-year statute of limitations period applies to legal actions founded upon promissory notes or other written contracts. NMSA § 37-1-3. The limitations period begins to run on the maturity date. *Reynolds v. Landau*, 468 P.3d 928, 937 (N.M. App. 2020). Dr. Vu lost his right to seek to enforce the Note on November 6, 2019.

C.   The Assignment Did Not Give Dr. Vu a Claim Against Debtor.

The Assignment, which was never recorded nor disclosed to Debtor, did not give Dr. Vu any right to collect money from Debtor. Dr. Vu could not perform under the assigned Purchase Agreement because he did not have title to the Lot. Because of that, he could not sue Debtor if he failed to close on the purchase of the Lot and Mobile Home. As it transpired, when closing did occur it was with Mr. Trien, not Dr. Vu. Debtor paid his $5,000 down payment to Mr. Trien, signed the Mortgage to Mr. Trien, and got a warranty deed for the Lot from Mr. Trien. Mr. Trien's fraudulent dealings with Dr. Vu did not affect Debtor's valid ownership of the Lot or right to the Mobile Home. Being unaware of the Assignment and Mr. Trien's double dealing, Debtor did business with Mr. Trien in good faith, paying at least $40,400 on the Mortgage. Had Dr. Vu taken title to the Lot and Mobile Home when Mr. Trien signed the Assignment; recorded the Assignment; and promptly notified Debtor that he was the new owner, the outcome would have been different. Instead, Dr. Vu apparently relied on Mr. Trien to protect his interests. That turned out to be a mistake.

D.   The Texas Default Judgment Cannot be Challenged in this Court.

---

it to be entered of record in the office of the county clerk of the county where the mortgage or deed of trust is recorded.").

Despite the obvious service problems and Debtor's viable defenses to Dr. Vu's claims against him, this Court must honor the Texas Default Judgment. *See, e.g., Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (the Supreme Court's *Rooker/Feldman* abstention doctrine bars the losing party in a state court action "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights"); *Bergman v. LaCouture*, 218 F. App'x 749, 751 (10th Cir. 2007) (*Rooker/Feldman* doctrine barred federal court from setting aside a state court judgment as to which defendant claimed she was denied due process because she was not given adequate notice or opportunity to be heard in the state court proceeding); *In re Goetzman*, 91 F.3d 1173, 1178 (8th Cir. 1996) ("[T]here is [no] procedural due process exception to the [Rooker/Feldman] doctrine."); *In re Rifkin*, 2010 WL 2521458, *2 (Bankr. D. Kan.) ("In general, allegations of lack of due process or absence of state court jurisdiction do not create exceptions to the *Rooker-Feldman* doctrine . . . [e]ven when the party seeking to avoid the state court judgment alleges it is void for lack of service of process[.]"). Debtor's only potential recourse is to challenge the validity of the Texas Default Judgment in the Texas state courts. Because of the full faith and credit requirement, the Court will allow Dr. Vu's claim in the amount of $37,500 as an unsecured claim.

E.   <u>Dr. Vu Has no Interest in the Mobile Home</u>.

In New Mexico, manufactured homes are "subject to the registration and certificate of title provisions of the Motor Vehicle Code." NMSA § 66-3-1(A).[6] They are personal property. NMSA §7-36-8(b)(2); § 66-1-4.11(B) (definition of manufactured home).

---

[6] Mobile homes are subject to assessment and personal property tax. NMSA § 66-6-26.

To be valid, a security interest in a Mobile Home must attach, *see* NMSA § 55-9-203, and be perfected by having the lien notated on the certificate of title. NMSA § 66-3-201. Dr. Vu neither obtained nor perfected a security interest in the Mobile Home. Furthermore, Dr. Vu applied for the title post-petition, in violation of the automatic stay. *See* § 362(a)(5) (a bankruptcy petition operates as a stay applicable to all entities of "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose" prepetition). Both the application and the title were void ab initio. *See Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) ("It is well established that any action taken in violation of the stay is void and without effect.").

Finally, Dr. Vu's purported judgment lien, which is not valid, would not have encumbered personal property like the Mobile Home in any event. *See* NMSA § 39-1-6 (judgment liens encumber real property).

F. <u>Dr. Vu Has No Interest in the Lot</u>.

As the Deed of Trust is no longer a valid lien on the Lot and the Mortgage is not owned by Dr. Vu (and appears to have been paid), Dr. Vu's only potential source of a lien or other interest in the Lot would be a judgment lien arising from the Texas Default Judgment. However, to achieve that end Dr. Vu would first have had to domesticate the judgment. NMSA § 39-1-6.

Any judgment, decree, or order of a court of the United States that is entitled to full faith and credit in New Mexico is a "foreign judgment" governed by New Mexico's Foreign Judgment Act, NMSA §39-4A-1 through 39-4A-6. Before a foreign judgment may be enforced or executed against the judgment debtor, the judgment creditor must file an authenticated copy of the judgment "in the office of clerk of the district court of any county of [New Mexico] in which the judgment debtor resides or has any property[.]" NMSA § 39-4A-3(A). "At the same time of the filing of the

foreign judgment, the judgment creditor or his lawyer shall make and file with the clerk of the district court an affidavit setting forth the name and last known address of the judgment debtor and the judgment creditor." NMSA § 39-4A-4(A). The clerk of the district court is then required to mail a notice of the filing of the foreign judgment and the affidavit to the judgment debtor. NMSA § 39-4A-4(B). The judgment creditor is required, as well, to mail a notice of the filing of the judgment to the judgment debtor by certified mail. *Id.* "No execution or other process or enforcement of a foreign judgment . . . shall issue until twenty days after the date the judgment is filed. NMSA § 39-4A-4(C). Dr. Vu did not take any of the steps required to domesticate the Texas Default Judgment.

Had he domesticated the Texas Default Judgment, Dr. Vu could then have obtained a transcript of the judgment from the New Mexico state court and filed it in the Dona Ana County records. *See* NMSA § 39-1-6. Recording a valid transcript of a New Mexico judgment in a particular county gives the judgment creditor a lien on the judgment debtor's real property in that county. *Id.*

G.  <u>The Trustee's Sale was Invalid</u>.

The purported trustee's sale of the Lot in October 2021 was invalid for a number of reasons. First, Ms. Addison is not the named trustee.[7] The appointment of a successor trustee is governed by NMSA § 48-10-7, which requires among other things, the substitution to be made "by recording notice of the substitution in the office of the county clerk" with notice given by the beneficiary of

---

[7] The Deed of Trust identified Mr. Reinhardt as trustee. The legitimacy of this designation is questionable because Mr. Reinhardt was a member of the state bar of Texas, but not of New Mexico. *See* NMSA § 48-10-6(A)(1) (an attorney who is a member of the state bar of New Mexico is qualified to serve as the trustee of a deed of trust).

the trust by certified mail to the trustor, the trustee, and the successor trustee. There is no evidence that Ms. Addison or Dr. Vu took the steps required to effect a trustee substitution.

Second, the notice of the trustee's sale was purportedly made pursuant to the power of sale as provided in the Deed of Trust. As discussed earlier, however, the statute of limitations applicable to the Note and Deed of Trust had already expired so the Deed of Trust could no longer be enforced.

Third, the notice of the trustee's sale stated that the sale would be made to satisfy the Texas Default Judgment. That statement was incorrect; Deed of Trust did not secure payment of the Texas Default Judgment. Rather, it once secured payment of a debt previously owed by Mr. Trien and satisfied by delivery of the Assignment. A deed of trust beneficiary cannot switch debts and debt obligors when he feels like it.

Fourth, the trustee's power of sale under a deed of trust after default arises 90 days after the recording of the notice of the sale. *See* NMSA § 48-10-10(A), (C). Here, only 88 days passed between the recorded notice of sale and the sale.

Fifth, the deed of release and reconveyance was recorded post-petition and is void.

For the foregoing reasons, the trustee's deed purporting to transfer the Lot to Dr. Vu is void and of no legal effect.

H.    Section 362(k).

While Debtor did not bring a claim under § 362(k) for stay violations, it appears that Dr. Vu violated the automatic stay in two significant ways—first by taking title to the Lot and then by taking title to the Mobile Home. Both acts were void ab initio, but they remain part of the public record. The parties should work together to remedy these violations or Debtor should file a motion pursuant to § 362(k) seeking damages or other remedies for Dr. Vu's stay violations.

## Conclusion

Dr. Vu has an allowed unsecured claim for $37,500. In all other respects, Dr. Vu's proof of claim is disallowed. By separate order, Dr. Vu will be required to transfer title to the Mobile Home to Debtor and release the Deed of Trust.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 28, 2022
Copies to: Counsel of record